PHILLIP A. TALBERT
United States Attorney
KEVIN C. KHASIGIAN
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>APPROXIMATELY $22,000.00 IN U.S. CURRENCY,<br><br>APPROXIMATELY $18,000.00 IN U.S. CURRENCY, AND<br><br>APPROXIMATELY $9,970.00 IN U.S. CURRENCY,<br><br>　　　　　　　Defendants. | 2:23-MC-00423-WBS-DB<br><br>CONSENT JUDGMENT OF FORFEITURE |

　　　　Pursuant to the Stipulation for Consent Judgment of Forfeiture, the Court finds:

　　　　1.　　On July 6, 2023, agents with the Drug Enforcement Administration ("DEA") contacted Daquan Hill ("Hill"), Jamal Christopher Spratling ("Spratling"), and Franquois Middleton ("Middleton"), (collectively "claimants") at the Sacramento International Airport in Sacramento, California. Approximately $22,000.00 in U.S. Currency was seized from Hill, Approximately $18,000.00 in U.S. Currency was seized from Spratling, and Approximately $9,970.00 in U.S. Currency was seized from Middleton during the law enforcement encounter. The total seized on July 6, 2023, was $49,970.00 (collectively, the "defendant currency").

1

2. The DEA commenced administrative forfeiture proceedings, sending direct written notice to all known potential claimants and publishing notice to all others. On or about September 21, 2023, the DEA received a claim from Spratling asserting an ownership interest in the defendant currency.

3. The United States represents that it could show at a forfeiture trial that on July 6, 2023, Spratling, Middleton, and Hill traveled on United Airlines Flight 1415 from Denver, Colorado to Sacramento, California, with their origin of travel that day being Jacksonville, Florida. Law enforcement received information regarding suspicious travel by Spratling, indicating that he purchased his ticket one day prior to his flight, checked no luggage, and had a drug-related criminal history.

4. The United States represents that it could show at a forfeiture trial that law enforcement positioned themselves near the gate for Spratling's incoming flight. Spratling started walking towards the terminal exit when law enforcement, clearly displaying their badges, approached him and asked if his name was Jamal to which Spratling said "no." Law enforcement asked Spratling where he was traveling from, to which Spratling responded "Denver." Law enforcement asked if Spratling was traveling with any drugs or a large amount of cash, to which Spratling said he purchased an ounce of marijuana from a dispensary in Denver and had $7,000.00 cash in his bag. Law enforcement asked Spratling if a roll-away suitcase nearby was his, and Spratling said no, it belonged to his Uncle, identifying a nearby individual (Middleton) ten feet away. Law enforcement asked if a black duffle bag nearby belonged to him, and Spratling said no, that it belonged to his cousin (Hill) who was sitting with Middleton. While speaking with Spratling, law enforcement's trained drug detection dog positively alerted to the presence of the odor of narcotics on the travel items belonging to Spratling, Hill, and Middleton.

5. The United States represents that it could show at a forfeiture trial that law enforcement asked Middleton if he had any narcotics or a large amount of cash in his roll-away suitcase. Middleton stated the roll-away belonged to him, but the contents including the $5,000.00 belonged to Spratling, Hill, and him. Middleton gave consent to search his roll-away suitcase and law enforcement found cash concealed in clothing. Law enforcement informed them that they were not in any trouble, but their carry-on luggage were under investigation. Law enforcement asked the men to accompany them to a

separate room where the luggage could be fully searched.  Spratling said he would rather show law enforcement the money and marijuana in the open.  Spratling removed an envelope full of cash and a glasses case which contained a plastic bag with what appeared to be an ounce of marijuana from his backpack.

6. The United States represents that it could show at a forfeiture trial a consensual search of Spratling's luggage revealed two envelopes of cash totaling $18,000.00.  Law enforcement asked Spratling if he ever had currency seized by law enforcement, and Spratling replied $20,000.00 in 2022; he would not elaborate on the details of the seizure.

7. The United States represents that it could show at a forfeiture trial that Middleton said his luggage contained $5,000.00 in cash that was from disability and work proceeds.  Middleton said he planned to stay a week in Sacramento then return to Florida but had not yet booked a flight.  A consensual search of Middleton's luggage revealed $9,970.00 in cash stuffed in several pairs of pants.  Hill told law enforcement that he had $3,700.00 in his duffel bag from work as a floor installer.  A consensual search of Hills's duffle bag revealed $22,000.00 in cash that also was located in several pairs of pants.

8. The United States represents that it could show at a forfeiture trial that a later bank count of the cash seized from Spratling's carry-on bag totaled $18,000.00 – the defendant currency.  This was comprised of 180 $100 bills.

9. The United States represents that it could show at a forfeiture trial that a later bank count of the cash seized from Middleton's carry-on bag totaled $9,970.00 – the defendant currency.  The denominations of the seized $9,970.00 was 1 $10 bill and 498 $20 bills.

10. The United States represents that it could show at a forfeiture trial that a later bank count of the cash seized from Hill's carry-on bag totaled $22,000.00 – the defendant currency.  The denominations of the seized $22,000.00 was 2 $5 bills, 1 $10 bill, 94 $20 bills, 46 $50 bills, and 178 $100 bills.  The total seized on July 6, 2023, was $49,970.00.

11. The United States could further show at a forfeiture trial that the defendant currency is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

3

12. Without admitting the truth of the factual assertions contained above, claimants specifically denying the same, and for the purpose of reaching an amicable resolution and compromise of this matter, claimants agree that an adequate factual basis exists to support forfeiture of the defendant currency. Spratling acknowledged that he is the sole owner of the defendant currency, and that no other person or entity has any legitimate claim of interest therein. Should any person or entity institute any kind of claim or action against the government with regard to its forfeiture of the defendant currency, claimants shall hold harmless and indemnify the United States, as set forth below.

13. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1345 and 1355, as this is the judicial district in which acts or omissions giving rise to the forfeiture occurred.

14. This Court has venue pursuant to 28 U.S.C. § 1395, as this is the judicial district in which the defendant currency was seized.

15. The parties herein desire to settle this matter pursuant to the terms of a duly executed Stipulation for Consent Judgment of Forfeiture.

Based upon the above findings, and the files and records of the Court, it is hereby ORDERED AND ADJUDGED:

1. The Court adopts the Stipulation for Consent Judgment of Forfeiture entered into by and between the parties.

2. Upon entry of this Consent Judgment of Forfeiture, the Approximately $22,000.00 in U.S. Currency and Approximately $9,970.00 in U.S. Currency, together with any interest that may have accrued on the total amounts seized, shall be forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6), to be disposed of according to law.

3. Upon entry of this Consent Judgment of Forfeiture, but no later than 60 days thereafter, the Approximately $18,000.00 in U.S. Currency shall be returned to claimant Jamal Christopher Spratling through his attorney Curtis Fallgatter.

4. The United States of America and its servants, agents, and employees and all other public entities, their servants, agents, and employees, are released from any and all liability arising out of or in any way connected with the seizure or forfeiture of the defendant currency. This is a full and final release applying to all unknown and unanticipated injuries, and/or damages arising out of said seizure or

4

forfeiture, as well as to those now known or disclosed. Claimants waived the provisions of California Civil Code § 1542.

5. No portion of the stipulated settlement, including statements or admissions made therein, shall be admissible in any criminal action pursuant to Rules 408 and 410(a)(4) of the Federal Rules of Evidence.

6. All parties will bear their own costs and attorney's fees.

7. Pursuant to the Stipulation for Consent Judgment of Forfeiture filed herein, the Court enters a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465, that there was reasonable cause for the seizure of the above-described defendant currency.

IT IS SO ORDERED.

Dated:  May 20, 2024

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE